J. S57007/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| TERESA GATTO, | : | No. 841 WDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, March 4, 2015,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0013535-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED SEPTEMBER 02, 2016**

Teresa Gatto appeals the judgment of sentence in which the Court of Common Pleas of Allegheny County, in a waiver trial, sentenced her to serve a term of six months of restrictive intermediate punishment with permission for work release followed by two years of probation for theft by unlawful taking, a first degree misdemeanor.[1]   Appellant was also ordered to pay restitution of $972.54.

The facts as recounted by the trial court are as follows:

> From 2006-2011, Appellant was in charge of planning All Camp, a weekend camping event for all girl scout troops in the West Perry Service Area of the Girl Scouts of Southwestern Pennsylvania. All Camp was held between June and August every

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3921(a).

year. . . . As part of her planning duties, Appellant managed the All Camp PNC bank account, which was created in 2004. Every girl attending All Camp paid a $40 fee. The girls' troop leader retained $15 of the fee in the individual troop bank account to pay for the girl's [sic] meals while at camp, and the remaining $25 was deposited into the All Camp bank account by Appellant. Appellant was then tasked with using those funds solely to finance the camp. Specifically, those funds were to be used to rent the campsite, pay the archery and canoeing instructors, the lifeguard, rent the canoes and archery equipment from the Girl Scouts of Southwestern Pennsylvania, and to pay for any additional unit or camp-wide activities to be conducted at camp. Typically, the items for camp activities were purchased in the months leading up to the camping session. Troop leaders, who were persons other than Appellant, purchased all of the food for their individual troop at camp the week before. . . .

During her time as the manager of the All Camp bank account, Appellant submitted only one expense report (in 2012) to West Perry Girl Scouts financial manager, Peggy Huwe, though Appellant was required to turn in an expense report annually. Likewise, Appellant did not submit any receipts for purchases made from the All Camp account, except for one receipt with the 2012 expense report. Administrators from the Girl Scouts organization never examined any bank statements, as those were mailed to Appellant's home, and she never provided them to the administrators. . . .

When Appellant resigned after the 2011 All Camp, there was $38 remaining in the All Camp account. Huwe and other Girl Scout leaders then assumed both the planning and finances for All Camp for the next year. They collected $2500 from the girls attending the camp, and only had to spend $415 from the All Camp account to meet expenses for the camp. Though camp costs varied slightly from year to year, the number of girls remained relatively constant. The Girl Scout leaders became

concerned that the account managed by Appellant only had $38 remaining after five years, whereas they had over $2000 remaining after a single year of planning for the camp. With that concern, they requested statements from the bank for previous years. Upon review of the bank statements they contacted the West View Police Department to investigate their preliminary conclusion that Appellant had misappropriated a significant amount of money. . . .

Allegheny County District Attorney's detective Jackie Weibel investigated the All Camp account from 2006-2011. Detective Weibel interviewed girl scout representatives, obtained the expense report from the Girl Scouts, and additional expense reports from Appellant not turned over to the Girl Scouts, and interviewed Appellant regarding specific line item purchases from the All Camp account. Detective Weibel cross-referenced camp expenditures with Appellant's bank account, Appellant's Giant Eagle Advantage Card purchases, and the expense reports submitted by Appellant. At the conclusion of this investigation, Detective Weibel concluded that Appellant misappropriated $4818.41 from the All Camp account for personal purposes. . . .

After reviewing the testimony of the Commonwealth and defense witnesses, including that of Appellant, and an independent review of the bank records, the Trial Court found fourteen instances of misappropriation proven beyond a reasonable doubt, totaling $972.54. Those instances are detailed hereinbelow.

On November 10, 2006, Appellant wrote a check from the All Camp account to cash for $84.75. The camping session for 2006 had already been held, and it would have been too early to buy items for next year's camp as planning had not begun yet. This check did not correspond with any reimbursements or expenses for the camp. . . .

On January 17, 2007 (mislabeled January 17, 2017 by Appellant), Appellant wrote a check from the All Camp account to cash for $140. Again, this check was written after the 2006 camping session, and before planning began for the 2007 All Camp. This check did not correspond with any reimbursements or expenses for camp. . . .

On June 6, 2008, Appellant wrote a check from the All Camp account to cash for $134. This check did not correspond with any reimbursements or expenses for camp. . . .

On May 20, 2009, Appellant wrote a check from the All Camp account to herself for $239.40. This amount did not correspond with any reimbursement for camp expenses from her personal account. . . .

On May 27, 2009, Appellant wrote a check from the All Camp account to cash for $300 as a "deposit reimbursement." Bank records show that appellant paid $251.45 from her personal account as a deposit for Rent & Event on May 28, 2009. Appellant over-reimbursed herself $48.55. . . .

On June 18, 2011, Appellant paid for camp items with the All Camp account at Giant Eagle, but withdrew an additional $30 in cash from the All Camp account through the cashback option at the register. After examining the 2011 expense report, there is no evidence that she used that money for camp items. . . . Given the regularity and consistency with which Appellant used this cashback option in subsequent trips in 2011, it is clear that she was taking extra money with each transaction for personal uses. In total, she withdrew cashback amounts from the All Camp account eight times from June 18, 2011, to August 13, 2011. . . .

On June 25, 2011, appellant paid for camp items with the All Camp account at Giant Eagle, but again withdrew an additional $30 in cash from the

All Camp account through the cashback option at the register. . . .

On July 10, 2011, Appellant paid for Kennywood tickets for her personal use from the All Camp account at Giant Eagle. She also withdrew cash using the cashback function at the register, for a total personal expenditure of $81.98 from the All Camp account. . . . Appellant stated that she accidentally used the wrong account, and simply did not reimburse herself for items purchased for camp from her personal account. . . . However, contrary to Appellant's self-serving statement, Appellant's personal bank account did not have any unreimbursed camp expenditures, and Appellant continued to withdraw cash from Giant Eagle (using cashback), allegedly for camp expenditures, the next five trips she made to Giant Eagle, for a total of $115.11. On July 16, 2011, she withdrew $30 cashback. On July 24, 2011, she withdrew $12.58 cashback. On July 28, 2011, she withdrew $12.53 cashback. On August 5, 2011, she withdrew $30 cashback. On August 13, 2011, she withdrew $30 cashback. Notably, she only used this cashback function in 2011, which was her last year controlling the finances for All Camp. . . .

On August 2, 2011, Appellant wrote a check from the All Camp account to cash for $200 for "Snappy Logo Reimbursement." Appellant's personal bank account record shows that Appellant paid Snappy Logos $131.25 on August 17, 2011 from her personal account for the patches from Snappy Logo, and did not reimburse the All Camp account for the over-reimbursement. Appellant overreimbursed herself $68.75. . . .

Trial court opinion, 12/9/15 at 4-9 (citations omitted).

Appellant filed a post-sentence motion challenging the weight of the evidence and also moved for modification of sentence and sought probation. The trial court denied the motions by order dated April 27, 2015.

Appellant raises the following issue before this court:

> WAS THE EVIDENCE INSUFFICIENT TO SUSTAIN THE CONVICTION OF THEFT BY UNLAWFUL TAKING (M1) BECAUSE THE COMMONWEALTH FAILED TO PROVE, BEYOND A REASONABLE DOUBT, THAT [APPELLANT] INTENTIONALLY DEPRIVED THE GIRL SCOUTS OF THE FUNDS AT ISSUE?

Appellant's brief at 4.

> A claim challenging the sufficiency of the evidence is a question of law. ***Commonwealth v. Widmer***, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000). In that case, our Supreme Court set forth the sufficiency of the evidence standard:
>
>> Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. ***Commonwealth v. Karkaria***, 533 Pa. 412, 625 A.2d 1167 (1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. ***Commonwealth v. Santana***, 460 Pa. 482, 333 A.2d 876 (1975). When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. ***Commonwealth v. Chambers***, 528 Pa. 558, 599 A.2d 630 (1991).
>
> ***Id.*** at 319, 744 A.2d at 751.

***Commonwealth v. Morgan***, 913 A.2d 906, 910 (Pa.Super. 2006).

Appellant argues that the Commonwealth failed to establish that she intentionally deprived the Girl Scouts of $972.54.

A person is guilty of theft by unlawful taking of movable property, 18 Pa.C.S.A. § 3921(a), if he "unlawfully takes or exercises unlawful control over movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a). The Commonwealth may establish the elements of theft by unlawful taking by circumstantial evidence. *Commonwealth v. Haines*, 442 A.2d 757, 759 (Pa.Super. 1982).

Appellant argues that the evidence presented by the Commonwealth established that she assigned money from the All Camp account to herself but did not establish that she was misappropriating funds rather than simply repaying herself for the purchases that she made as director of All Camp. According to appellant, no Commonwealth witness had direct knowledge of the exact costs associated with running the camp during the years in question because none of them were directly involved with making purchases for the entire camp. In contrast, appellant argues that she testified in great detail about the purchases she made. At most, she argues that she was guilty of bad bookkeeping, and bad bookkeeping is not a crime.[2]

---

[2] At times, appellant attempts to argue that she was more credible than the Commonwealth witnesses. In determining whether the evidence was sufficient, this court may not review the evidence and substitute its judgment for that of the fact-finder. *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011).

In order to determine the sufficiency of the evidence, this court must examine the evidence presented to the trial court. Detective Jackelyn Weibel ("Detective Weibel") of the Allegheny County District Attorney's Office and a certified fraud examiner was assigned to investigate the matter after Girl Scout representatives had contacted the West View Police. Here, Detective Weibel analyzed the PNC Bank account that was used for the All Camp funds. Based on her analysis, Detective Weibel testified that there were many checks payable to Giant Eagle and many checks payable to cash which were negotiated by appellant. (Notes of testimony, 2/11/15 at 5.) The Commonwealth introduced these bank records into evidence. (*Id.* at 6.) Detective Weibel also obtained a search warrant for appellant's personal bank account as well as a search warrant to get the Giant Eagle records for appellant's Advantage Card. These records were introduced into evidence. (*Id.* at 7-8.) The Commonwealth also introduced into evidence spreadsheets prepared by Detective Weibel which indicated checks payable to Giant Eagle from the PNC account, checks payable to cash from the PNC account, and checks payable to appellant from the PNC account. (*Id.* at 12-14.) Detective Weibel initially found checks totaling $539.75 payable to Giant Eagle from the All Camp account that she believed did not correspond to All Camp expenses after her investigation which included questioning appellant. (*Id.* at 15.) Appellant admitted to Detective Weibel that tickets purchased for Kennywood Park were for her

personal benefit. (*Id.* at 18.) Through her analysis, Detective Weibel found checks payable to cash that were more than the reimbursable amount that appellant used to pay for camp expenses with her own funds. (*Id.* at 20.) Detective Weibel also noted the purchase of gift cards which other Girl Scout officials said were not used for Girl Scout events. Detective Weibel testified that the total amount misappropriated was $4,818.41. (*Id.* at 25.)

Lisa Vogler ("Vogler"), a troop leader who was involved in planning for the All Camp from 2004 until approximately 2013, testified that the amount spent on "patches" was approximately $100 after appellant left and that when she attended planning meetings that appellant organized no food was provided. (*Id.* at 40-41.) Essentially, Vogler testified to refute appellant's testimony about how the camp was conducted including what was purchased, when purchases were made, and the amount of purchases.

The trial court reviewed this evidence and reduced the total amount misappropriated by appellant from $4,818.34 to $972.34. The bank records for the All Camp account, the Advantage Card records, and appellant's own personal bank records, as well as the spreadsheets prepared by Detective Weibel, supported the conclusion that appellant purchased items for her own personal use with funds from the All Camp account, directed funds from the All Camp account to herself using the cashback option at Giant Eagle, bought tickets for Kennywood Park for herself, and reimbursed herself for a greater amount than the original outlay for legitimate purchases

she made for All Camp.  In taking that evidence in the light most favorable to the Commonwealth, the trial court could infer that appellant's actions satisfied the elements of theft by unlawful taking.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/2/2016