333 A.2d 876

**COMMONWEALTH of Pennsylvania**

**v.**

**Lester SANTANA, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 19, 1974.

Decided March 18, 1975.

484

Allan M. Tabas, Tabas, Horwitz & Furlong, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Jr., Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, Deborah E. Glass, Asst. Dist. Attys., Chief, Appeals Div., Abraham J. Gafni, Deputy Dist. Atty. for Law, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant, Lester Santana, was indicted and charged with possession with intent to manufacture or deliver a controlled substance, heroin.[1] At the conclusion of his trial before a judge sitting without a jury, the appellant was found guilty as charged. Motions for a new trial and in arrest of judgment were argued and denied. Thereafter, appellant was sentenced to a term of imprisonment of from six months to three years. An appeal was taken to the Superior Court which affirmed the judgment of sentence, the six judges hearing the appeal being equally divided. *Commonwealth v. Santana*, 228 Pa.Super. 756, 312 A.2d 803 (1973). We granted allocatur.

The principal issue involved in this appeal is whether the evidence presented by the prosecution was sufficient to establish beyond a reasonable doubt that the appellant was illegally in possession of narcotic drugs.

"The task of the appellate court in reviewing the sufficiency claim is to determine whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the jury could

1. The Controlled Substance Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13, as amended, Act of October 26, 1972, P.L. 1048, No. 263, § 1, 35 P.S. § 780–113.

properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted." *Commonwealth v. Williams*, 445 Pa. 539, 547, 316 A.2d 888, 892 (1974).

See also *Commonwealth v. Fortune*, 456 Pa. 365, 367, 318 A.2d 327, 328 (1974) ; *Commonwealth v. Foster*, 455 Pa. 216, 219, 317 A.2d 188, 189 (1974); *Commonwealth v. Stanley*, 453 Pa. 467, 469, 309 A.2d 408, 410 (1973).

We further recognize that:

"[C]ircumstantial evidence may, of course, be sufficient to convict. Nevertheless, because of the fact that it is circumstantial and that a grave wrong may be done to an innocent man by reasoning from circumstances not sufficiently cogent in themselves or as connected, and particularly not sufficiently exclusive of every innocent hypothesis, the courts have been very sedulous to prevent an innocent man being found guilty where the evidence does not conform to the acceptable standards." *Rodriguez v. United States*, 232 F.2d 819, at 821 (5th Cir. 1956) ; cited with approval in *Guevara v. United States*, 242 F.2d 745 (5th Cir. 1957).

The Commonwealth produced evidence to establish that on February 6, 1973, Philadelphia police officers went to 1400 North 7th Street in the City of Philadelphia armed with a Search and Seizure Warrant for that premises. The person named in the warrant was Thomas Santana, the father of appellant. The premises was a three story brick dwelling with a grocery store on the first floor operated by the appellant's mother; a vacant apartment on the second floor front, and another apartment on the second floor rear. The third floor front apartment was occupied by appellant, his wife and his son. The officer stated that when they arrived at approximately 6:30 P.M. they found the appellant's mother in the store with approximately 25 Puerto Rican males.

As the police officers entered the side door of the premises they heard a female voice shouting, "Lester, Lester police". That voice was subsequently identified to have been the voice of Maria Ayala. Immediately thereafter, Officer Yost testified that he observed appellant running out the door of the front apartment of the second floor. The appellant ran down the stairs directly to the police who were ascending and was ordered to halt. The police then went to the second floor front apartment and gained entrance by breaking the lock. Inside the room they found an old stove, the door on which was opened; inside the stove was a rolled up brown paper bag containing four bundles of heroin and other smaller bags containing four loose packs, a total of 104 packages.

Although the testimony of Officer Yost suggested that he in fact saw appellant emerging from the apartment where the narcotics were found, the undisputed physical facts seem to refute this statement. The officer testified that he did not see the appellant close the door or secure the lock after leaving the apartment. However, it was conceded that the door was in fact locked with a "dead lock" which required a key to either open or close it. Further, the appellant was in the plain view of the officers, was not seen to have disposed of the key and when he was apprehended he was immediately searched and no key was found. It further was established, without contradiction, that the second floor front apartment had originally been occupied by the present tenant of the second floor rear apartment and that this tenant was the only one who had access and control of both the front and rear apartments on the second floor. The stairway that the appellant was seen descending provided a common access to the second and third floor apartments.

Additionally, Miss Ayala testified that as she was approaching the grocery store she saw a number of policemen inside and people with their hands up in the air. Assuming that there had been a robbery, she went to the

side of the building where the entrance to the upper floors was located and said, "Lester, I think they just held your mother up." She stated that at this point appellant was at the third floor window and responded in Spanish that he would be down immediately. Appellant corroborated this version and stated as he was descending the stairway, in response to the call from Miss Ayala, he was taken into custody.

■ It would appear from the undisputed facts that the door to the second floor apartment had been secured by a dead lock; that although allegedly within the unobstructed view of the officers, appellant was not seen closing the door, fastening the lock, or discarding the key. Further, no key was found when he was searched, nor was any key recovered from the area. We thus conclude that the statement of the officer that appellant was observed actually leaving the room, should have been rejected by the triers of fact.

> "It is settled law in Pennsylvania that testimony in conflict with the incontrovertible physical facts and contrary to human experience and the laws of nature must be rejected, . . ." *Colna v. Northern Metal Co.*, 242 F.2d 546, 549 (3rd Cir. 1957).

More consistent with the evidence was the statement of the officer, at one point in his testimony, that appellant was first seen on the second floor landing. Excluding the evidence that the appellant was seen leaving the apartment in question it is apparent that the verdict of guilt could not be sustained.

■ Moreover, accepting the officers' testimony that appellant was observed emerging from the apartment, we do not believe that the evidence supported a finding of guilt. With the unchallenged testimony that the second floor tenant had access to this apartment, the Commonwealth was required to establish, at least a joint power of control and dominion in appellant. In *Com-*

*monwealth v. Tirpak,* 441 Pa. 534, 272 A.2d 476 (1971), we rejected the theory that proof of appellant's presence at the scene and opportunity to commit or join in the possession or control was sufficient to prove the requisite possession. In *Commonwealth v. Fortune, supra,* we discussed in detail the nature of possession which would justify criminal responsibility. Although in that case we were considering the Act of September 26, 1961, P.L. 1664, § 4(q), 35 P.S. § 780–4(q), the observations are equally pertinent to the instant factual situation.

In that opinion we stated:

"When the illegal possession of contraband is charged, the evidence must establish that the appellant had a conscious dominion over the contraband. *Commonwealth v. Davis,* 444 Pa. 11, 280 A.2d 119 (1971). The illegal possession of narcotic drugs is a crime which 'by its very nature is unique to the individual. By definition the possessor is the only person who could commit this crime. Guilt by association . . . is unacceptable.' *Commonwealth v. Reece,* 437 Pa. 422, 427, 263 A.2d 463, 466 (1970). See also, *Commonwealth v. Tirpak,* 441 Pa. 534, 272 A.2d 476 (1971) . . . . '[T]he fact of possession loses all persuasiveness if persons other than the accused had equal access . . . to the place in which the property was discovered. . . .' *Commonwealth v. Davis,* 444 Pa. 11, 16, 280 A.2d 119, 121 (1971), quoting 9 J. Wigmore, Evidence § 2513 (3d ed. 1940). When the crime charged is the illegal possession of narcotic drugs, the presence of a person at the scene, without a consideration of the totality of the circumstances, does not prove the crime." Id 456 Pa. at 368, 318 A.2d at 328–329.

■ Appellant's mere presence for an undetermined time in an apartment where contraband was secreted absent evidence to connect him with the contraband or that

he knew of its existence in the apartment, coupled with evidence that another individual had access to and control over the area, fails to present the totality of facts that would overcome the presumption of innocence and justify a conclusion of guilt. In a stronger factual setting more incriminating than the instant case, we overturned a burglary and larceny conviction rejecting the "proximity theory". *Commonwealth v. Whitner,* 444 Pa. 556, 281 A.2d 870 (1971). In *Whitner,* the suspect was found lying in the same room as a stolen typewriter. We rejected the Commonwealth's position observing:

> "Since appellant was not shown to be the tenant of the apartment where the typewriter was found, the only evidence that he 'possessed' the typewriter was his solitary presence, within three feet of the typewriter, while lying down in somebody else's apartment. Mere proximity is not enough to show possession." Id at 560, 281 A.2d at 872.

We have had occasion to observe that "it is not necessary that each piece of evidence be linked to the [defendant] beyond a reasonable doubt. It is only necessary that each piece of evidence include the [defendant] in the group who could be linked while excluding others, and that the combination of evidence link the [defendant] to the crime beyond a reasonable doubt." *Commonwealth v. Russell,* 444 Pa. 4, 10, 279 A.2d 185, 188 (1971); *Commonwealth v. Petrisko,* 442 Pa. 575, 275 A. 2d 46 (1971).

Nor are we impressed with the Commonwealth's claim that the additional facts of the stove door being open and the fact that Miss Ayala called to appellant as the police were entering, possesses the probative force to sustain the verdict. These facts at best are equivocal and certainly cannot be claimed to link the accused while excluding all others. The fact of an opened door to an old stove in an unoccupied apartment clearly

does not establish that whoever enters that apartment is aware of the contents of that stove and intends to exercise dominion and control over any articles therein. Equally as innocuous is the alleged statement of Miss Ayala, "Lester, Lester police." The mere fact that one announces to an occupant of a building that police are approaching does not establish knowledge of criminal activity within. Even if this premise was to be accepted it clearly cannot be argued that the criminal activity was in any way related to the crime for which appellant is now charged.

For the foregoing reasons, we are constrained to conclude that the evidence was legally insufficient to sustain the verdict.

Judgment of sentence reversed and appellant is discharged.

JONES, C. J., and EAGEN and POMEROY, JJ., concur in the result.