J-S60027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN DOUGLAS HESS | |
| Appellant | No. 167 MDA 2014 |

Appeal from the Judgment of Sentence entered December 17, 2013
In the Court of Common Pleas of Cumberland County
Criminal Division at No: CP-21-CR-0000643-2012

BEFORE: OTT, STABILE, and JENKINS, JJ.

MEMORANDUM BY STABILE, J.:        **FILED JANUARY 12, 2015**

Appellant, Steven Douglas Hess, appeals from the judgment of sentence imposed on December 17, 2013 in the Court of Common Pleas of Cumberland County following his convictions of involuntary deviate sexual intercourse ("IDSI"), sexual assault, and two counts of indecent assault.[1] Appellant argues the evidence was insufficient to sustain his IDSI conviction. Following review, we affirm.

In its 1925(a) opinion, the trial court summarized the testimony and evidence presented at Appellant's trial as follows:

> [Victim], (hereinafter L.H.), testified that he met [Appellant] at Carlisle Cares, a local homeless shelter. At the shelter, they became friends but were not very close. L.H. is diagnosed with

---

[1] 18 Pa.C.S.A. §§ 3123, 3124.1 and 3126, respectively.

two different types of severe arthritis and walks with a cane. L.H. eventually acquired an apartment for himself at 45 Wolf's Bridge Road, Middlesex Township in Cumberland County, Pennsylvania. It was an efficiency apartment that had its own entrance, living room, bathroom, and kitchen. L.H. had a futon set up in the living room for him to sleep on.

On February 28, 2012, L.H. had beer and wine at his apartment and [Appellant] came over to help L.H. with painting. L.H. set up a sleeping bag for [Appellant] in the living room. L.H. stated that [Appellant] kept going in and out of his apartment to talk to the other neighbors, and never actually painted the apartment for him. Throughout the evening, L.H. became pretty intoxicated and he thought [Appellant] was also drinking. At some point, [Appellant] told L.H. he wanted to do something nice for him and "said something about a blow job." At the time, L.H. just took this as vulgar talk. Sometime between 11:00 p.m. and 12:00 a.m., [Appellant] said he was leaving and would be back. L.H. informed him that if he was not back within an hour he would not let him back inside. After [Appellant] left, L.H. locked the door and passed out on the futon still wearing his jeans, boxers, shirt, belt, socks, and shoes.

The next thing L.H. remembers was seeing [Appellant] over him. L.H. described feeling his legs being pulled up and hitting the end of the futon. He then saw [Appellant] with his penis in his mouth. [Appellant] was also fondling and putting his fingers inside L.H.'s rectum. L.H. testified that he was unaware this was occurring when it began and at no point did he consent to [Appellant's] actions.

As L.H. became more coherent, he started kicking and eventually was able to get up. L.H. remembers screaming and telling [Appellant] to get out of his house. He started hitting [Appellant] with his cane, but [Appellant] pushed him down. L.H. then remembers going into the kitchen where he grabbed a knife and told [Appellant] that if he didn't leave he would kill him. [Appellant] came over and punched L.H. in the arm and L.H. slashed at [Appellant] to get him away. L.H. stated he probably made contact with [Appellant's] arm. L.H. was able to push [Appellant] toward the door, and [Appellant] eventually took off. As he was leaving, L.H. testified that [Appellant] asked him not to call the police and told him they could work something out.

L.H. had heard previously that [Appellant] carried a small gun and knifes [*sic*] with him. Although he never saw [Appellant] with a weapon that evening, L.H. stated [Appellant] kept going near his backpack, which made him nervous and ultimately led to L.H. getting the knife. L.H. stated that he really felt that [Appellant] would have killed him that night if he did not make his last cry and desperate attempt against him. In fact, L.H. recalled [Appellant] saying he was going to kill him that evening.

L.H. called the police; and Officer Carver arrived at the scene, where L.H. provided him with a written statement. Officer Carver described L.H.'s demeanor when he arrived as "[d]isturbed, distraught" and "scared and angry at the same time." L.H. was able to provide his assailant's name as Steve, but was unable to provide a last name. Officer Carver took pictures of the scene and noted there was a "significant amount of blood" on the floor that he believed belonged to the assailant. L.H. was taken to the Carlisle Hospital that night where they took swabs from his genital area as part of a rape kit. The hospital report indicated that there was no trauma to L.H.'s genitals.

That night, Sergeant Patterson identified Steve as Steven Hess [Appellant] to Officer Carver. Officer Carver printed out an identification photo of [Appellant] and had it sitting on top of his laptop in the police vehicle. When he picked up L.H. at the hospital, L.H. saw the photo and pointed out that it was the person who sexually assaulted him.

Officer Carver arrested [Appellant] that night, informing him he was being charged with sexual assault. Officer Carver did not provide [Appellant] with any details about the assault or who the complaining victim was. [Appellant] told Officer Carver "I am not a freak," "I don't fucking suck dick." [Appellant] also stated that L.H. was dreaming. Thus, [Appellant] made these statements to Officer Carver before the Officer had disclosed to [Appellant] that L.H. was the complaining victim. [Appellant] denied all the allegations. During another conversation on March 14, 2012, [Appellant] told Officer Carver that "his pants might have been down," referring to L.H.

Katherine Cross, a forensic biologist and DNA technical leader at Guardian Forensic Science testified at trial as an expert in

forensic biology, serology, and DNA analysis. As part of her duties, Ms. Cross examines evidence for body fluids, performs DNA analysis, and tries to determine who the DNA belongs to. Ms. Cross obtained and performed testing on the rape kit in this case. After Ms. Cross tested the general and dried secretion swabs, she was able to determine that an unknown individual was the major contributor of DNA while the minor contributor was consistent with L.H.'s DNA. She also concluded it was likely that the major contributor's DNA was from saliva or from the cells on the inside of the mouth because of how much DNA was recovered from the sample. Ms. Cross was eventually provided with a sample of [Appellant's] DNA and was able to state to a degree of scientific certainty that the unknown individual and major contributor was, in fact, [Appellant].

[Appellant] testified at trial and presented a somewhat different version of events. He agreed that he met L.H. at Carlisle Cares and went over to L.H.'s to help him paint his new apartment. [Appellant] testified that when he arrived to paint, L.H. asked him if he wanted to watch a pornographic movie, but [Appellant] passed it off. [Appellant] ran out to get more paint; and when he came back, L.H. had taken out alcohol. [Appellant] stated he had five or six shots of vodka. [Appellant] then explained that L.H. was the one that initiated the sexual contact and both of them performed oral sex on the other. [Appellant] maintained that L.H. at no time was unconscious and that he always knew what he was doing.

After the sexual contact, [Appellant] testified that L.H. accused him of stealing a key and they got into a fight. [Appellant] stated L.H. hit him with his cane, although [Appellant] described the cane as more of a wooden oak staff than a cane. [Appellant] was hit on the head with the cane and had to have three stiches [*sic*] on the inside and seven staples on the outside. [Appellant] was also injured on his elbow from the cane. As [Appellant] was putting his boots on to leave, [Appellant] stated L.H. came rushing at him with a knife and stabbed him in the hand. [Appellant] then left the apartment and testified that L.H. told him not to call the cops. When first questioned by the police, [Appellant] said that he never engaged in sexual contact with L.H. He testified he did not tell his side of the story to police because he did not think that L.H. would take the issue this far.

- 4 -

Trial Court Opinion ("T.C.O."), 3/21/14, at 2-7 (references to Notes of Testimony omitted).

On September 10 2013, at the conclusion of a two-day trial, the jury found Appellant guilty of IDSI, sexual assault, indecent assault—unconscious or unaware victim, and indecent assault—lack of consent. The jury acquitted Appellant on a charge of simple assault. T.C.O. at 1. On December 17, 2013, the trial court sentenced Appellant to a term of seven to 20 years' imprisonment for IDSI and ordered Appellant to comply with lifetime reporting requirements under Megan's Law. Sentencing Order, 12/17/13, at 1. On the sexual assault conviction, the trial court sentenced Appellant to a term of five to ten years in prison and directed Appellant to comply with Megan's Law reporting requirements. *Id.* The sexual assault sentence was to run concurrently with the IDSI sentence for a total period of incarceration of seven to 20 years. *Id.* The remaining convictions merged with the IDSI and sexual assault convictions for purposes of sentencing. *Id.* at 1-2.

Appellant filed a Motion for Judgment of Acquittal on December 26, 2013. The trial court denied the motion on January 6, 2014 and this timely appeal followed.

In the sole issue raised in this appeal, Appellant argues that the evidence, viewed in the light most favorable to the Commonwealth, was insufficient as a matter of law to convince a reasonable fact finder that

Appellant was guilty of IDSI. Appellant's Brief at 8. Appellant is not challenging the remaining convictions.

With respect to a sufficiency challenge, our Supreme Court has stated:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. **Commonwealth v. Karkaria,** 533 Pa. 412, 625 A.2d 1167 (1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. **Commonwealth v. Santana**, 460 Pa. 482, 333 A.2d 876 (1975). When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. **Commonwealth v. Chambers**, 528 Pa. 558, 599 A.2d 630 (1991).

**Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). Further, as this Court has recognized:

We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no facts supporting a finding of guilt may be drawn. The fact-finder, when evaluating the credibility and weight of the evidence, is free to believe all, part, or none of the evidence.

**Commonwealth v. Oliver**, 946 A.2d 1111, 1112 (Pa. Super. 2008) (quoting **Commonwealth v. Stevenson,** 894 A.2d 759, 773 (Pa. Super. 2006) (citations and quotations omitted)).

IDSI is defined in 18 Pa.C.S.A. § 3123 and provides, in pertinent part, that "[a] person commits a felony of the first degree when the person

engages in deviate sexual intercourse with a complainant: (1) by forcible compulsion; [or] . . . (3) who is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring." 18 Pa.C.S.A. § 3123(a)(3). Deviate sexual intercourse is defined as "sexual intercourse per os or per anus between human beings." 18 Pa.C.S.A. § 3101. "A person is unconscious for purposes of the statute when they lack the conscious awareness they would possess in the normal waking state." *Widmer*, 744 A.2d at 753 (citations omitted). A person acts recklessly with respect to a victim's unconsciousness by consciously disregarding a substantial and unjustifiable risk that the victim is unconscious. *See* 18 Pa.C.S.A. § 302(3). "The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." *Id.* "Furthermore, it is well-established that the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005) (internal quotations and citations omitted).

With the above principles in mind, we turn to Appellant's contention that the evidence presented at trial was insufficient to sustain his conviction for IDSI. In his brief, Appellant "adopts the Statement of Facts in the [trial

court's] opinion . . . as if set forth in this brief in its entirety."  Appellant's Brief at 9.  Appellant then argues that L.H.'s testimony, *i.e.,* "that he was fully dressed when he went to sleep and did not know what was going on until his belt was loosened, his pants were taken off, his underwear was lowered and the Appellant was having oral sex with him," is incredible. Appellant's Brief at 12.  "Where the evidence offered to support the verdict is in contradiction to the physical facts, and contravention to human experience and laws of nature, then the evidence is insufficient as a matter of law."  ***Id.*** (citing ***Commonwealth v. Santana***, 333 A.2d 876 (Pa. 1975).[2]

The Commonwealth counters that Appellant's argument is without merit because "the jury believed the victim and not [Appellant's] inconsistent and self-serving statements.  [Appellant] implies that a man cannot have his pants removed, be pinned down, and then be digitally violated and fellated while in an alcoholic stupor."  Appellee's Brief at 10.

Our review of the evidence presented at trial, as aptly summarized by the trial court in its opinion and viewed in the light most favorable to the Commonwealth as verdict winner, leads us to conclude that the elements of

---

[2] The Commonwealth challenges Appellant's reliance on ***Santana*** as "disingenuous," noting that ***Santana*** recognized that it is physically impossible to unlock a deadbolt lock from the outside without a key whereas here it is physically possible for one man to physically and sexually assault another man who is in an alcoholic stupor.  Appellee's Brief at 12-13.  We agree and find Appellant's reliance on ***Santana*** misplaced.

IDSI have been established beyond a reasonable doubt. The evidence supports a finding that an act of deviate sexual intercourse was forcibly performed by Appellant on L.H. without his consent and while L.H. was unconscious and unaware that the sexual intercourse was occurring.

As the trial court explained, there was no question that Appellant's DNA was present on L.H.'s genitals. While Appellant contended that he and L.H. performed oral sex on each other, it was for the jury to decide which witness to believe, either Appellant or L.H. T.C.O. at 8. "As the fact-finder, the jury was free to observe the demeanor of both L.H. and [Appellant] and make credibility determinations. The jury found L.H. to be credible." *Id.* at 9. Further, "[Appellant's] defense theory shifted from absolutely nothing happened to, yes, there was sexual activity but it was consensual. Clearly one of these statements was a lie. Accordingly, the jury could reasonably surmise that [Appellant] was capable of lying." *Id.* at 10.

The evidence of record was sufficient to prove the elements of IDSI beyond a reasonable doubt. Appellant's assertions to the contrary fail for lack of arguable merit.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2015

- 9 -