J. S73003/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                      :          PENNSYLVANIA
            v.              :
                         :
DAVON LAMAR SMITH,           :        No. 1675 WDA 2015
                         :
          Appellant     :

Appeal from the Judgment of Sentence, August 25, 2015,
in the Court of Common Pleas of Blair County
Criminal Division at No. CP-07-CR-0000780-2014

BEFORE:  FORD ELLIOTT, P.J.E., LAZARUS AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED DECEMBER 09, 2016**

Davon Lamar Smith appeals the judgment of sentence in which the Court of Common Pleas of Blair County sentenced him to serve 36-72 months for two counts of possession with intent to deliver a controlled substance ("PWID") and two counts of criminal use of a communications facility.[1]  He was also convicted of two counts of simple possession[2] for which he received no further penalty.

The record reflects that on September 25, 2013, a confidential informant for the Altoona Police Department, Eric Minnoia ("CI"), contacted appellant via cellular telephone to arrange the purchase of heroin.  The

---

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. § 7512, respectively.

[2] 35 P.S. § 780-113(a)(16).

Altoona Police Department provided the CI with $300 in order to pay a debt to appellant of $150 and to purchase heroin with the other $150. Before the controlled buy was conducted, the CI was strip searched. He was then transported to his home by the police officers and waited on his front steps for appellant. Shortly thereafter, a car drove up and picked up the CI. After the transaction was conducted, the CI was dropped off back at his residence approximately five minutes later. The police officers then took the CI back to the police department where the heroin was recovered from him. He underwent another strip search. (Notes of testimony, 6/15/15 at 48-49, 53-56, 60.) The parties later stipulated that the substance obtained from appellant was, in fact, heroin. (*Id.* at 139-140.)

On September 28, 2013, the CI contacted appellant at the same phone number and sought to make another purchase of heroin. Once again, the CI was strip searched, provided with "buy money," and transported to his residence. (*Id.* at 123-124, 128, 154, 167.) Patrolman Andrew Crist ("Patrolman Crist") waited inside the CI's apartment with the CI until appellant contacted the CI. When appellant arrived in a vehicle outside the CI's residence, the CI left his residence and entered the vehicle. (*Id.* at 128-129.) Sergeant Christopher Moser ("Sergeant Moser") of the Altoona Police Department followed the vehicle and took photographs of the vehicle and its occupants. (*Id.* at 170.) After the transaction was completed, the vehicle returned to the CI's residence, and the CI was dropped off. The

police officers again transported the CI to the police station, conducted a strip search, and recovered what later was identified as heroin from the CI. (*Id.* at 170-171.)

On or about June 9, 2014, two Criminal Informations were filed which charged appellant with the crimes for which he was convicted.

On June 15 and 16, 2015, the trial court conducted a jury trial. The CI, Sergeant Benjamin Jones ("Sergeant Jones") of the Altoona Police Department, Patrolman Crist, and Sergeant Moser all testified on behalf of the Commonwealth. At the conclusion of the Commonwealth's case, appellant moved for a judgment of acquittal on the basis that there was not enough evidence to link him to possession because there were no photographs that were descriptive and no record of anything changing hands. As to the charges of criminal use of a communications facility, appellant argued that nothing was specifically linked to him because there was no name programmed in the CI's phone, there was no phone found on appellant's person to prove that he actually owned any phone that was linked with the telephone numbers used by the CI to obtain heroin, and there was no record traced back to him. The trial court denied the motion. (*Id.* at 203-204.)

On June 16, 2015, the jury returned guilty verdicts on all charges. On August 25, 2015, the trial court imposed the sentence set forth above. On

September 8, 2015, appellant moved for reconsideration of his sentence which the trial court denied.

On appeal to this court, appellant raises the following issue for our review: "Whether the [t]rial [c]ourt erred by denying [a]ppellant['s] . . . Motion for Judgment of Acquittal because there was insufficient evidence for each of the charges in both of the above mentioned criminal actions to permit said charges to be submitted to the jury at the criminal trial in this case?" (Appellant's brief at 4.)

Our standard of review of appellant's claim that the court erred in denying his motion for judgment of acquittal is as follows: "A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." *Commonwealth v. Foster*, 33 A.3d 632, 634-635 (Pa.Super. 2011).

> A claim challenging the sufficiency of the evidence is a question of law. *Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000). In that case, our Supreme Court set forth the sufficiency of the evidence standard:
>
> > Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. *Commonwealth v. Karkaria*, 533 Pa. 412, 625 A.2d 1167 (1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and

the laws of nature, then the evidence is insufficient as a matter of law. ***Commonwealth v. Santana***, 460 Pa. 482, 333 A.2d 876 (1975). When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. ***Commonwealth v. Chambers***, 528 Pa. 558, 599 A.2d 630 (1991).

> ***Id.*** at 319, 744 A.2d at 751.

***Commonwealth v. Morgan***, 913 A.2d 906, 910 (Pa.Super. 2006).

Initially, appellant contends that the trial court erred when it denied his motion for judgment of acquittal with respect to the charges of PWID and simple possession at criminal action number CP-07-CR-0000780-2014.

The charges of possession and PWID are set forth as follows:

> (16)  Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.
>
> . . . .
>
> (30)  Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing

> with intent to deliver, a counterfeit controlled substance.

35 P.S. §§ 780-113(a)(16) and (30).

Specifically, appellant asserts that actual possession or possession with intent to deliver was not established because the CI failed to properly identify appellant as the person who sold him the heroin on March 25, 2013. It is true that the CI initially called the person from whom he purchased heroin by the nickname "Trouble" which was actually the nickname of another suspected drug dealer. Appellant was known as "Flip." The CI stated in his statement for the police department:

> Trouble pulled up and I got in and rode around the block. He dropped me back off after he gave me the bundle and I gave him a hundred and fifty dollars. . . . I met back up with Moser and was taken to the police station and gave him the bundle and was strip searched. Trouble drove past Officer Moser's car multiple times paranoid that it was a cop car. I assured him that it wasn't and he still served me.

Notes of testimony, 6/15/15 at 117. In addition, Sergeant Moser placed the heroin from this buy in an envelope labeled "Trouble Doe." (***Id.*** at 193.)

Despite this evidence, this court is not convinced that the Commonwealth failed to establish that appellant possessed the heroin that was sold to the CI. The CI pointed out appellant as the person who sold him the heroin on the first buy on March 25, 2013, and whom he identified initially as "Trouble" during the trial. (***Id.*** at 94.) After the "buy," the CI testified that he gave the drugs, which were later identified as heroin, to

Sergeant Moser. (*Id.* at 96.) The CI explained that after the first buy, Sergeant Moser informed him that appellant was known as "Flip" and not as "Trouble." The CI explained that he also did controlled buys on Kenneth Harrell, who was known as "Trouble." While he could tell the two apart, it was only the names that confused him. (*Id.* at 97-98.) Sergeant Jones explained the procedures followed for a controlled buy to ensure that any drugs returned to the police department by a confidential informant are a product of the controlled buy. (*Id.* at 43-44.) Sergeant Jones also explained that the police department produced pictures of both "Trouble" and "Flip" and presented them to the CI without telling him who was who. The CI was able to identify the two correctly, though he had the names wrong. (*Id.* at 46-47.) Sergeant Jones testified that he dropped the CI off prior to the September 25, 2013 buy, and the CI never left his sight until appellant arrived and picked him up in his vehicle. (*Id.* at 55.) Sergeant Jones testified that he identified appellant as the person in the vehicle that picked up the CI. (*Id.* at 57.) Also, shortly after picking up the CI after the controlled buy, Sergeant Jones observed appellant at a gas station putting gas in his car. (*Id.* at 59.) All of this evidence, the safeguards for confidential informants, the CI identifying appellant in open court as the person who sold him heroin, and Sergeant Jones observing appellant before and after the drug buy, provides sufficient evidence that appellant possessed heroin and possessed it with intent to deliver.

Next, appellant argues that the Commonwealth failed to present sufficient evidence to establish that appellant possessed heroin and possessed it with intent to deliver on September 28, 2013. Appellant essentially raises the same argument with respect to the CI's ability to correctly identify him. However, the CI testified that he bought drugs from the same person on September 28, 2013, as he did on September 25, 2013. (*Id.* at 98.) He further identified appellant in the courtroom as the person who sold him drugs on September 28, 2013. (*Id.* at 102.) He also explained that he was subject to the same procedures prior to and following the controlled buy. (*Id.* at 99.) In addition, Patrolman Crist testified that he conducted a strip search of the CI both before and after the controlled buy. (*Id.* at 124.) Patrolman Crist also testified that he observed the CI telephone appellant and a car pulled up outside the CI's residence before the phone was answered. The CI entered the vehicle and shortly thereafter returned with a bundle of heroin. (*Id.* at 128-129.) Sergeant Moser testified that he observed appellant driving the vehicle into which the CI entered to make the transaction. (*Id.* at 169.) Once again, the evidence presented by the Commonwealth was sufficient to establish that appellant committed the material elements of each crime.

Appellant then contends that the evidence presented by the Commonwealth was insufficient to establish that appellant twice committed criminal use of a communications facility.

Section 7512 of the Crimes Code, 18 Pa.C.S.A. § 7512, provides in pertinent part:

>    **(a)**    **Offense defined.--**A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act.    Every instance where the communication facility is utilized constitutes a separate offense under this section.
>
>    . . . .
>
>    **(c)**    **Definition.--**As used in this section, the term "communication facility" means a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail.

18 Pa.C.S.A. § 7512.

Appellant concedes that a cell phone was employed to make plans for each transaction and that the use of a cell phone comes under the definition set forth in 18 Pa.C.S.A. § 7512(c).    However, appellant argues that the evidence failed to link the cell phone used to appellant.    Sergeant Jones testified that the telephone number was programmed into the CI's phone under appellant's nickname.  (Notes of testimony, 6/15/15 at 53.)  Appellant points to the confusion regarding his nickname to cast doubt on this

statement. Further, Patrolman Crist testified that before the second transaction, he verified the phone number the CI was about to call, and it was just a phone number with no names associated with it. (*Id.* at 135.)

While that testimony does appear somewhat contradictory, the CI's own testimony provides support for the crime of criminal use of a communications facility. The CI testified that he contacted appellant by telephone to set up the first controlled buy. (*Id.* at 92.) The CI also testified that prior to the second controlled buy, he telephoned appellant through a number that was in his phone and that he used that number to contact appellant prior to his cooperation with law enforcement. (*Id.* at 99-100.) With respect to the second buy, Sergeant Moser was in a police vehicle with the CI, when the CI received a phone call from appellant to confirm the transaction. The CI showed Sergeant Moser his call log to indicate the number. (*Id.* at 154.) The number was the same as the one Sergeant Jones testified that the CI called to set up the first controlled buy. (*Id.* at 53.)

This evidence established that the CI and appellant communicated by telephone to set up both drug buys. The drug buys were completed, so the telephone was used to facilitate the commission of a crime under The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-113, which constitutes criminal use of a communication facility under

18 Pa.C.S.A. § 7512. The evidence was sufficient to establish these violations.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/2016