J. S91007/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MARCUS DAVID KNIGHT, | : | No. 1019 MDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, April 26, 2016,
in the Court of Common Pleas of Berks County
Criminal Division at No. CP-06-CR-0001233-2014

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J. AND STEVENS, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED FEBRUARY 21, 2017**

Marcus Knight appeals the April 26, 2016 judgment of sentence in which the Court of Common Pleas of Berks County sentenced him to a term of 2 to 10 years' imprisonment in a state correctional facility for aggravated assault by vehicle when driving under the influence and to a concurrent term of 1 to 7 years' imprisonment for accidents involving death or personal injury -- not properly licensed.[1]

The relevant facts, as recounted by the trial court, are as follows:

> The evidence presented at trial established the following:  On the evening of October 20, 2013, at about 7:00 p[.]m[.], Melissa O'Neil (Melissa) was meeting a fried [sic], Justin (Justin), at the Krumsville Bar in Krumsville, Berks County,

---

* Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3735(1)(a) and 75 Pa.C.S.A. § 3742.1(a), respectively.

Pennsylvania, when she ran into Appellant. Appellant had been drinking. At approximately 9:00 p[.]m[.], Melissa and Justin went to a pig roast; Appellant followed behind them. At the pig roast, the three of them talked and "drank some more," for approximately two more hours. Andrea Sanchez (Andrea) was at the pig roast; Melissa introduced her to Justin and Appellant and she joined them. Melissa said everyone was "a little bit drunk." About 11:00 or 11:30 p[.]m[.], the four of them decided to go back to the Krumsville Bar. Melissa and Justin went in her car and Appellant and Andrea followed behind them. They all arrived at the bar and continued drinking beer and shots. At "last call" the four of them decided to go back to Melissa's house in Klinesville to continue the party. Melissa had a designated driver for her car, Justin, but Appellant and Andrea chose to go in Appellant's car. Justin offered to drive everyone but Appellant got angry; he did not want to leave his car. Melissa saw Appellant get into the driver's seat; Andrea was in the passenger's seat. She then saw Appellant's vehicle leave the parking lot and drive west.

At around 11:30 p[.]m[.] on October 19, Elise Nash (Nash) had gotten off work and drove to Krumsville to have a drink. She was there about twenty minutes when she saw Appellant, with some other people, come into the bar. She saw Appellant have about two or three drinks. She also saw the group leave, just before last call, at around 1:30. Nash saw Appellant purchase a 12 pack of beer to go. She overheard their plan to go back to Melissa's house.

At about 3:00 a[.]m[.], Daryl Smith was driving his dump truck westbound on old route 22 on the west side of Lenhartsville when he saw a car parked across the opposite side, with no lights on. Then he came upon debris from an accident, so he called 911 and got out of his truck. That is when he "saw a guy laying [sic] across the road" a good fifty (50) feet uphill from the car, on the westbound side on the shoulder and the slow lane. The guy was

not moving, so the truck driver pushed on him; he did respond slightly. He became conscious, but struggled to answer questions. There was blood coming out of his head and on the road at his head. The blood ran down the slope of the road about an inch and a half wide and two feet long, toward the vehicle. When the first ambulance showed up, the paramedic told the truck driver that there was another person in the vehicle.

Shawn Danner (Danner) was a full time paramedic for the Hamburg Emergency Medical Services when he received a call, at around 3:00 a[.]m[.], of a motor vehicle accident on old Route 22 between Hamburg and Lenhartsville. Upon arrival, he saw a male lying into the roadway, a vehicle further down, and a second patient, a female, lying behind the vehicle; she was also on the roadway. Danner first interacted with the male; he was conscious and alert, but extremely confused. The male was unable to explain how he got to the location that he was at or even what the location was. Danner did a physical assessment of the patient and noted the injuries. Upon the paramedics' arrival, the patient attempted to crawl away from the vehicle, but he did not move more than 5 or 10 feet. The patient was actively bleeding. Danner accompanied Appellant to the Lehigh Valley Hospital where he was taken to the trauma unit. Danner also went to attend to the female victim, who complained of neck and back pain. Because of her altered mental status, the victim did not verbalize many complaints. She was quickly moved into the back of the ambulance because of the cold weather, where other crew members discovered the rest of her serious bodily injuries.

Trooper Rebecca Clatch, of the Pennsylvania State Police, responded to the accident scene at around 3:00 a[.]m[.] on October 20, 2016. She stated that the area in which the crash occurred on Old Route 22 had a curve in the roadway, and a 45 mile per hour speed limit. This area was a no passing zone with a divided roadway, about

five miles west of the Krumsville Inn. The roadway was dry and there were no impediments on it. When she approached, she saw a silver vehicle on the southeast bound side of the road, on the shoulder against an embankment. She also saw an EMT with a male, approximately 200 feet west of the vehicle. The first thing she observed was a tire mark in the eastbound lane that went toward the center double lines. From there, continuing east, she saw two more tire marks that went toward the north embankment. There was fresh dirt spattered all over. The embankment got higher and Appellant had crawled where the brush was, on his hands and knees. He kept trying to get up; they urged him to stay where he was. He kept saying, "I'm okay. Leave me alone." Also on the embankment was a hunting stand in disarray and Appellant's shoe. His wallet was later found in this area. Also located was the front bumper of the vehicle. A telephone pole was sheered in half and pushed eastbound. The vehicle's rear bumper was on the road and its hood was in the eastbound lane, just south of this location. The passenger side door was open a little bit because it was pushed up against the embankment. The front windshield was severely cracked and the passenger side window was shattered. Both front airbags were deployed. The rear windshield was missing. The debris field was continuous. There was no evidence of an animal having been hit. The vehicle was a manual stick shift. The trooper interacted with Appellant at the scene and noticed he was bleeding heavily from his head and had lacerations on his forearms. Trooper Clatch observed that he had a strong odor of an alcoholic beverage coming from his person. He had bloodshot eyes and was on his hands and knees. The trooper felt the engine and it was still warm, even though it was a cold night. The blood loss she observed, the puddle on the ground, was still wet. Trooper Clatch stated that, based on the physical evidence she observed and her observations of Appellant, it was her opinion that he was not safely capable of operating a motor vehicle. Appellant's blood was drawn at approximately 4:25 a[.]m[.] and

his whole blood alcohol content was in the range of .270% to .332%. It was later determined that Appellant did not have a driver's license and that the damaged vehicle was registered to Appellant.

Andrea Sanchez told the jury that, on the night in question, she was working at the Stony Run Inn in Kempton when she left at around 9:30 or 10:00 p[.]m[.] and went to a bonfire down the street to meet new people. She knew Melissa, but she met Appellant for the first time at the bonfire. They were all drinking beer. Andrea stayed at the party for about an hour and a half. Around 11:00 p[.]m[.], they decided to go to the bar down the street, minutes away from where they were. Andrea told Melissa the only way she would go would be if she could get a ride back to her house. Melissa assured her that she would. Andrea got into Appellant's car and he drove her to the Krumsville Inn. Appellant bought her shots; he drank those beverages as well. They stayed at the bar until last call, when they decided to leave. Melissa came up to Andrea and told her she couldn't drive because she [Melissa] was drunk. At first it was suggested that Andrea come to Melissa's house for the night and that Melissa would take her to work in the morning. Then, somehow, Andrea testified that she decided that she should go with Appellant so he wouldn't have to ride alone. Andrea herself did not know how to drive a stick shift vehicle. She got into the front passenger seat. They pulled out of the parking lot of the Krumsville Inn; Andrea did not know where they were going. The next thing she remembered was waking up in the hospital two days later. These injuries changed her life forever. If left untreated, these injuries could have resulted in death or permanent disability or disfigurement.

Trial court opinion, 8/8/16 at 3-7 (citations to record omitted).

On December 8, 2015, the jury found appellant guilty of the aforementioned crimes as well as for driving under the influence of alcohol,

incapable of safe driving; driving under the influence of alcohol, high rate; drivers required to be licensed, and failure to keep right.[2]  The trial court imposed appellant's sentence on April 25, 2016.  On May 2, 2016, appellant filed a post-sentence motion which the trial court denied on May 26, 2016.  Appellant then appealed to this court.

On appeal, appellant raises the following issues for this court's review:

[1.]  Whether the evidence presented at trial was sufficient to support the guilty verdicts where the Commonwealth failed to establish, beyond a reasonable doubt, that Appellant was the driver of the vehicle at the time of the accident[?]

[2.]  Whether the Court erred and abused its discretion by not granting judgment of acquittal or dismissing the charges in light of the ***Brady*** [***v. Maryland***, 373 U.S. 83 (1963)] violation that occurred when the Commonwealth failed to preserve potentially exculpatory evidence, the unavailability of which caused prejudice to Appellant in that Appellant was deprived of his ability to conduct independent testing that may have, among other things, conclusively excluded Appellant as the driver of the vehicle[?]

Appellant's brief at 7.

Initially, appellant contends that the evidence presented by the Commonwealth was insufficient to sustain convictions for aggravated assault by vehicle when driving under the influence and for accidents involving death or personal injury -- not properly licensed because the Commonwealth

---

[2] 75 Pa.C.S.A. §§ 3802(a)(1), 3802(c), 1501(c), and 3301(a), respectively.

failed to present evidence that appellant was operating the vehicle when the

accident took place.

> A claim challenging the sufficiency of the evidence is a question of law. ***Commonwealth v. Widmer***, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000). In that case, our Supreme Court set forth the sufficiency of the evidence standard:

>> Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. ***Commonwealth v. Karkaria***, 533 Pa. 412, 625 A.2d 1167 (1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. ***Commonwealth v. Santana***, 460 Pa. 482, 333 A.2d 876 (1975). When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. ***Commonwealth v. Chambers***, 528 Pa. 558, 599 A.2d 630 (1991).

> ***Id.*** at 319, 744 A.2d at 751.

***Commonwealth v. Morgan***, 913 A.2d 906, 910 (Pa.Super. 2006).

Aggravated assault by vehicle when driving under the influence is

defined as:

> Any person who negligently causes serious bodily injury to another person as the result of a violation of section 3802 (relating to driving under influence of

J. S91007/16

> alcohol or controlled substance) and who is convicted of violating section 3802 commits a felony of the second degree when the violation is the cause of the injury.

75 Pa.C.S.A. § 3735.1(a).

Appellant does not contest that he was convicted of driving under the influence. However, he argues that there is no evidence to establish that he was driving the vehicle at the time of the accident. Melissa O'Neill ("O'Neill") and Andrea Sanchez ("Sanchez"), the other person in the vehicle at the time of the accident, both testified that appellant was behind the wheel of his vehicle when he and Sanchez left the Krumsville Inn. (Notes of testimony, 12/7/15 at 20-21, 122.) Further, appellant's vehicle had a manual transmission, and Sanchez testified that she did not know how to drive a "stick shift." (*Id.* at 124.) The jury found credible the testimony of Sanchez and O'Neill that appellant was driving when he left the Krumsville Inn. Given that Sanchez did not know how to operate a manual transmission and there is no evidence of anyone else riding in the vehicle, this court agrees with the trial court that the evidence presented by the Commonwealth was sufficient to sustain the conviction.

Appellant also asserts that there was insufficient evidence to support his conviction for Accidents Involving Death or Personal Injury while not properly licensed.

This offense is defined as:

> A person whose operating privilege was disqualified, canceled, recalled, revoked or suspended and not restored or who does not hold a valid driver's license and applicable endorsements for the type and class of vehicle being operated commits an offense under this section if the person was the driver of any vehicle and caused an accident resulting in injury or death of any person.

75 Pa.C.S.A. § 3742.1.

Appellant does not challenge the determination that he lacked a driver's license. Once again, he challenges the determination that he was driving the car when the accident took place. This court has already determined that the evidence was sufficient to support that conclusion.

Appellant next contends that the Commonwealth failed to provide any potentially exculpatory evidence to him in violation of *Brady*, 373 U.S. 83, in which the Supreme Court held that "suppression by the prosecution of favorable evidence to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ." *Id.* at 87.

This court has explained that, "to establish a *Brady* violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant." *Commonwealth v. Haskins*, 60 A.3d 538, 547 (Pa.Super. 2012) (citations omitted). The burden rests with the defendant to "prove by reference to the record, that evidence was withheld or suppressed by the prosecution." *Id.*

Specifically, appellant argues that the potentially exculpatory evidence was the vehicle and all of the exculpatory evidence contained therein. Appellant asserts that an investigation would help resolve ambiguities such as why both the driver and passenger seats of the vehicle were reclined, why a sneaker that did not belong to appellant was found near the driver's side area of the car, and whether the position of the clutch would have allowed Sanchez to reach the clutch had she been driving. Appellant admits that the Commonwealth neither hid nor destroyed the evidence. However, he argues that the Commonwealth failed to properly preserve the vehicle and did not provide it to appellant.

Trooper Clatch testified that the State Police did not impound the vehicle and it was towed to Wensel's Towing Company ("Wensel's") where it remained. At some point, it was ready to be released to the owner, appellant. Trooper Clatch testified that he told appellant that he could recover the vehicle at Wensel's. (Notes of testimony, 12/7/15 at 88.)

A **_Brady_** violation does not occur when a defendant knew or could have discovered evidence with reasonable diligence. **_Commonwealth v. Morris_**, 822 A.2d 684, 696 (Pa. 2003). Based on Trooper Clatch's testimony, appellant could have recovered the vehicle but did not exercise reasonable diligence. This court determines that the trial court properly denied appellant's motion for judgment of acquittal because appellant failed

to demonstrate that evidence (the vehicle) was suppressed by the Commonwealth, a necessary element to prove a ***Brady*** violation.[3]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/2017

---

[3] Because appellant failed to satisfy the first prong of ***Haskins***, this court need not address whether appellant established that he met the other two prongs.