J-S26027-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL EUGENE HARBST | : | |
| | : | |
| Appellant | : | No. 812 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 2, 2020
In the Court of Common Pleas of Bradford County
Criminal Division at CP-08-CR-0000400-2019

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                **FILED: OCTOBER 15, 2021**

Daniel Eugene Harbst (Appellant) appeals[1] from the judgment of sentence imposed after a jury found him guilty of six counts of involuntary deviate sexual intercourse with a child (IDSI) and four counts of indecent assault of a person less than 13 years of age.[2]  We affirm.

The trial court summarized the facts and procedural history as follows:

> On or about May 29, 2019, [Appellant] was charged with multiple counts of Rape of a Child, [IDSI], Corruption of Minors, and Indecent Assault.  The Rape of a Child and Corruption of Minor charges were eventually withdrawn and dismissed, as were some

---

[1] After the appeal was fully briefed, Appellant informed our Prothonotary that his private counsel passed away on June 22, 2021.  On July 9, 2021, we directed Appellant to inform us whether he intended to proceed *pro se* or retain new counsel, and that failure to respond within 21 days would result in Appellant being notated as *pro se* on this Court's docket.  Order, 7/9/21.  Appellant did not respond, and is thus *pro se*.

[2] 18 Pa.C.S.A. §§ 3123(b) and 3126(a)(7).

of the Indecent Assault [c]harges, and the remaining counts were tried before a jury, beginning October 7, 2019.

At trial, the Commonwealth produced several witnesses, including the eight-year-old child victim [(Victim)] who is [Appellant's] custodial (non-biological, non-adoptive) daughter, [V]ictim's mother, the forensic interviewer, family relatives, [V]ictim's first grade teacher, two law enforcement officers, and forensic and DNA scientists. [Appellant] testified on his own behalf, as did his wife, his mother, his grandmother, his mother's boyfriend, and a family friend. In addition to this live testimony, the forensic interview of [Victim] from January 2019 was introduced into evidence under the Tender Years Hearsay Act and presented in the form of an audio/video recording.

At the conclusion of the three-day trial, the jury found [Appellant] guilty of … six counts of [IDSI] and four counts of Indecent Assault … based on the jury's finding there was contact between the [V]ictim's and [Appellant's] intimate or sexual parts [].

On January 2, 2020, [Appellant] was sentenced to total confinement of eight to sixteen years for each IDSI conviction, to be served consecutive to each other, for an aggregate sentence of forty-eight to ninety-six years.

Trial Court Opinion, 5/11/20, at 1 (statutory citations omitted).

Appellant filed a timely but unsuccessful post-sentence motion, followed by the underlying notice of appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents five questions for review:

[1.] Was the trial evidence presented sufficient to warrant any of the guilty verdicts rendered?

[2.] Were the guilty verdicts rendered against the weight of the evidence?

[3.] Were the aggregated sentences imposed legally excessive?

- 2 -

[4.]  Did the trial court commit error when it refused to grant [Appellant] taxpayer funds to hire and utilize the services of a DNA expert because, said the [c]ourt, [Appellant] was being represented by a "private attorney"?

[5.]  Did the trial court commit error in finding [Appellant's] motion for a court order for taxpayer funding for the hiring and utilization of a DNA expert by the Defense inadequately drafted as a result of which the [c]ourt denied granting such to the Defense?

Appellant's Brief at 4 (reordered for disposition).

Appellant's first two issues purport to challenge the sufficiency and weight of the evidence. We repeat:

The distinction between these two challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, **Tibbs v. Florida**, 457 U.S. 31 (1982); **Commonwealth v. Vogel**, 461 A.2d 604 (Pa. 1983), whereas a claim challenging the weight of the evidence if granted would permit a second trial. **Id.**

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. **Commonwealth v. Karkaria**, 625 A.2d 1167 (Pa. 1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. **Commonwealth v. Santana**, 333 A.2d 876 (Pa. 1975). When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. **Commonwealth v. Chambers**, 599 A.2d 630 (Pa. 1991).

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. **Commonwealth v.**

*Whiteman*, 485 A.2d 459 (Pa. Super. 1984). Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. *Tibbs*, 457 U.S. at 38 n.11.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations modified). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Lewis*, 911 A.2d 558, 566 (Pa. Super. 2006) (citation omitted).

Appellant first claims "the evidence of penis/anal intercourse and oral sex was insufficient." Appellant's Brief at 30. However, in arguing the evidence was insufficient, Appellant solely challenges the Victim's credibility. Appellant argues:

> It is the contention of [Appellant] that the evidence of penis/anal intercourse and oral sex was insufficient. This assertion is based upon the fact that the aforementioned sexual acts cannot be said to have occurred **without accepting the testimony** of [Victim] and her testimony **must be discounted**. … The problem for the Commonwealth relates to the very nature of [Victim's] testimony. It is **inherently contradictory**, and it would be no matter who presented the testing and **how credible the witness was**. [Victim's] testimony **cannot be reconciled**. There could not be six acts of anal/penis intercourse while at the same time there were two such acts. Was it six or two acts or none? One cannot resolve the dilemma by saying that we will 'assume' that there were six such acts or two acts.

*Id.* at 30-31 (emphasis added).

Appellant's challenge goes to the weight, not the sufficiency, of the evidence. *See Commonwealth v. Melvin*, 103 A.3d 1, 43 (Pa. Super. 2014) ("An argument regarding the credibility of a witness'[] testimony goes to the

- 4 -

weight of the evidence, not the sufficiency of the evidence.");

***Commonwealth v. Trinidad***, 96 A.3d 1031, 1038 (Pa. Super. 2014)

("variances in testimony go to the credibility of the witnesses and not the

sufficiency of the evidence").  Our Supreme Court has concluded that an

"appellant's challenge to the sufficiency of the evidence must fail" where an

appellant phrases an issue as a challenge to the sufficiency of the evidence,

but the argument that appellant provides goes to the weight of the evidence.

***Commonwealth v. Small***, 741 A.2d 666, 672 (Pa. 1999).  Accordingly,

Appellant's sufficiency issue lacks merit.

Second, Appellant properly challenges the weight of the evidence

supporting his convictions for IDSI and indecent assault.[3]  We have explained:

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.  Resolving contradictory testimony and questions of credibility are matters for the finder of fact.  It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
> Moreover, appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence.  Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence.  One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the

---

[3] Appellant preserved this issue as required by Pa.R.Crim.P. 607 by raising it with the trial court in a post-sentence motion.  ***See*** Post-Sentence Motion, 1/13/20, at 1-5.

weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Miller*, 172 A.3d 632, 642-43 (Pa. Super. 2017)

(citations omitted).

Instantly, the trial court explained:

Here, the testimony of [Victim] alone, both live and as recorded during her interview at The Children's House on January 27, 2019, was credible, persuasive, and compelling evidence of [Appellant's] guilt[. Victim] discussed four instances where [Appellant] put his 'thingy' or 'dick,' which she located on a picture both at trial and during the interview as a penis in her 'butt.' [Victim] also described the resulting 'stuff in her underwear' as something that she did not 'know what it is,' but that it was 'slimy, really white,' and 'the next day it's all slimy but then it dries.' She also stated and described two separate instances where [Appellant] put his penis in her mouth. She said that she ended up with 'stuff' in her mouth that she 'spit' on her shirt and pillow. …

[I]t is worth noting that, at trial, although [Victim] identified only two instances of sexual misconduct, the child also confirmed at trial that she could remember events better during the January forensic interview, that her statements to the forensic interviewer were truthful, and that it was easier for her to discuss the events in that setting. While it is appropriate to note and acknowledge the inconsistencies and conflicts between [Victim's] live testimony at [] trial and her forensic interview nine months earlier, such inconsistencies are insufficient to render the verdict a miscarriage of justice.

Additionally, there was other noteworthy evidence that supports the verdict, including the DNA evidence that was based, in part, on the semen that was found in [Victim's] underwear that she wore to the forensic interview on January 29, 2019. While the

mere presence of semen in [Victim's] underwear is in itself significant, the DNA evidence further bolsters the verdict.

Trial Court Opinion, 5/11/20, at 3-4 (citations to notes of testimony omitted).

We agree with the trial court's assessment. During trial, the video of Joanne Babcock's forensic interview of Victim was introduced into evidence. N.T., 10/8/19, at 126, 131; Commonwealth Exhibit 4. During the interview, Victim told Ms. Babcock that Appellant put his "dick" in her "butt" four times. Forensic Interview Transcript, 1/27/19, at 7-18. Additionally, Victim stated that Appellant had put his "dick" in her mouth on two occasions. *Id.* at 18-20.

During her live testimony, Victim testified Appellant put his penis in her "butt" on two occasions. N.T., 10/8/19, at 120-23. However, Victim testified that she remembered talking with Ms. Babcock, and agreed that it was easier to talk with her because "there weren't so many people around." N.T., 10/8/19, at 127-28. Victim further testified that it was easier to remember what occurred at the time of the forensic interview, that she remembered Ms. Babcock asking about things Appellant did to her, and that she answered Ms. Babcock's questions truthfully. *Id.* at 128-29. Victim testified that at trial, she was "having a hard time saying some things that" she was able to tell Ms. Babcock, but "they were the truth when [I] told it to her." *Id.* at 129.

It was within the sole province of the jury to determine the weight of this evidence, resolve conflicts in the testimony, and assess credibility. *See Commonwealth Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017). "[T]he evidence

[was not] so tenuous, vague and uncertain that the verdict shocks the [collective] conscience of the [C]ourt." ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2016) (citation omitted). Appellant's weight issue does not merit relief.

In his third issue, Appellant challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." ***Id.*** We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations omitted).

Appellant has complied with the first three prongs of the test by raising his claim in a timely post-sentence motion, filing a timely notice of appeal,

and including in his brief a Rule 2119(f) concise statement. **See** Appellant's Brief at 6-8.

With respect to a substantial question, Appellant claims his sentence is excessive because the trial court "basically ignored all sentencing mitigating factors." Appellant's Brief at 8. Appellant raises a substantial question. **See Commonwealth v. Caldwell**, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) ("an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question.").

Preliminarily, we recognize:

> Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

**Commonwealth v. Nevels**, 203 A.3d 229, 247 (Pa. Super. 2019) (citation omitted).

Appellant concedes the trial court "imposed minimum sentence[s] within the middle of the guidelines standard range." Appellant's Brief at 42. However, Appellant argues the trial court,

effectively disregarded the Sentencing Code – (1) the character and life of [Appellant]; (2) [Appellant's] rehabilitative needs; (3) the limited risk of future sexual abuse by [Appellant]; and (4) the gravity of [Appellant's] behavior compared with other defendants. As a result the aggregated sentences here at issue were manifestly [and] clearly unreasonable.

*Id.* at 43-44. We disagree.

In conducting appellate review, we will "vacate the sentence and remand the case to the sentencing court with instructions if … the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S.A. § 9781(c)(2). In determining whether a sentence is "clearly unreasonable,"

> the appellate court must consider the defendant's background and characteristics as well as the particular circumstances of the offense involved, the trial court's opportunity to observe the defendant, the presentence investigation report, if any, the Sentencing Guidelines as promulgated by the Sentencing Commission, and the 'findings' upon which the trial court based its sentence.

***Commonwealth v. Coulverson***, 34 A.3d 135, 147 (Pa. Super. 2011) (citation omitted). ***See also*** 42 Pa.C.S.A. § 9781(d).

> With regard to confinement,

> the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . . In every case in which the court imposes a sentence for a felony or misdemeanor . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

42 Pa.C.S.A. § 9721(b).

Further, where the judge has the benefit of a presentence investigation report, "it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Fowler*, 893 A.2d 758, 767-68 (Pa. Super. 2006); *see also Commonwealth v. Brown*, 249 A.3d 1206, 1212 (Pa. Super. 2021) ("when the trial court has the benefit of a presentence investigation [] report, it is presumed that the court was both aware of and appropriately weighed all relevant information contained therein.") (citation omitted).

Here, the trial court "had the benefit of a pre-sentence investigation report." Trial Court Opinion, 5/11/20, at 9; *see also* N.T., 1/2/20, at 2-3; *Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. 2011) ("Where the sentencing court imposed a standard-range sentence with the benefit of a pre-sentence report, we will not consider the sentence excessive."). Also, Appellant concedes his sentence is in the standard range, Appellant's Brief at 42, and "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010).

Finally — and contrary to Appellant's argument — the trial court considered mitigating factors. At sentencing, the trial court specifically addressed Appellant's age, family, criminal history, education, and lack of

- 11 -

drug or alcohol abuse. N.T., 1/2/20, at 2-3. The court further considered the facts of the case, the seriousness of the offenses, the impact on the Victim, and Appellant's rehabilitative needs. *Id.* at 8-9. Thus, we "shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with **mitigating statutory factors**." ***Commonwealth v. Rosario***, 248 A.3d 599, 614 (Pa. Super. 2021) (citation omitted, emphasis added).

Ultimately, and in its discretion, the trial court imposed standard-range, consecutive sentences. ***See Commonwealth v. Brown***, 249 A.3d 1206, 1212 (Pa. Super. 2021) ("Long standing precedent recognizes that the Sentencing Code affords the sentencing court discretion to impose its sentence concurrently or consecutively[.]") (citations omitted). We discern no error.

Appellant also argues his "aggregated sentences violat[e] the cruel and unusual clause of the Eight[h] Amendment of the United States [C]onstitution." Appellant's Brief at 44. "This issue [] presents a question of law; thus, our scope of review is plenary, and our standard of review is *de novo*." ***Commonwealth v. Hill***, 238 A.3d 399, 409-10 (Pa. Super. 2020) (citation omitted).

It is well-settled that the Eighth Amendment forbids the imposition of "cruel and unusual punishments." U.S. Const., amend. VIII. However, our Supreme Court has explained that the Eighth Amendment does not require strict proportionality between crime and sentence; rather, it forbids only

extreme sentences which are grossly disproportionate to the crime. ***Commonwealth v. Baker***, 78 A.3d 1044, 1047 (Pa. 2013).

As discussed above, the trial court determined Appellant's crimes warranted the imposition of consecutive, standard-range sentences, which in the aggregate, do not amount to cruel and unusual punishment. ***See also Commonwealth v. Zirkle***, 107 A.3d 127, 133 (Pa. Super. 2014) ("We have stated that the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court.") (citations omitted); ***Commonwealth v. Swope***, 123 A.3d 333, 341 (Pa. Super. 2015) (a defendant "is not entitled to a volume discount for his crimes.") (citation omitted). Appellant's sentence is not cruel and unusual.

In his fourth and fifth issues, Appellant alleges the trial court "erroneously failed to grant taxpayer's funds to [Appellant] so that he would have necessary funds to hire and utilize an DNA expert." Appellant's Brief at 53. "The provision of public funds to hire experts to assist in the defense against criminal charges is a decision vested in the sound discretion of the court and a denial thereof will not be reversed absent an abuse of discretion." ***Commonwealth v. Konias***, 136 A.3d 1014, 1019 (Pa. Super. 2016) (citation omitted).

Specifically, Appellant argues:

> [The trial court] committed error in not granting taxpayer funds to utilize the services of a DNA expert. The DNA findings were critical to the case outcome. [Appellant] was entitled to the benefit of his own expert. He was financially indigent. Without

taxpayer funds [Appellant] had no ability to hire such an expert. The basis for funding was financial indigency. His private attorney was acting pro-bono.

His funding motion, in spite of what the court said, was adequately drafted. It effectively set out the facts needed to show financial indigency. He was entitled to a hearing on his motion but was denied the same.

Appellant's Brief at 14-15.

It is well-established,

that indigent defendants have a right to access the same resources as non-indigent defendants in criminal proceedings. The state has an affirmative duty to furnish indigent defendants the same protections accorded those financially able to obtain them. Procedural due process guarantees that a defendant has the right to present competent evidence in his defense, and the state must ensure that an indigent defendant has fair opportunity to present his defense.

*Commonwealth v. Melvin*, 172 A.3d 14, 22-23 (Pa. Super. 2017) (citation omitted).

However, "the Commonwealth is not obligated to pay for the services of an expert simply because a defendant requests one." *Konias*, 136 A.3d at 1020-21 (citation omitted). A defendant's "failure to supply the trial court with, at a minimum, any financial information substantiating his inability to pay, is fatal to his argument." *Id.* at 1021. Thus, a "defendant must make some specific showing of a financial hardship for the court to afford relief." *Id.* "[O]nly after the defendant has provided some reliable information as to his inability to pay, is the trial court bound to satisfy itself of the truth of the averments of an inability to pay by conducting a hearing." *Id.* at 1020

(citation omitted). A "mere averment of indigency and inability to pay is not sufficient to trigger the necessity for a hearing[.]" *Id.* at 1021.

Upon review, we find the Honorable Evan S. Williams III, sitting as the trial court, has capably and accurately addressed Appellant's arguments regarding the denial of his request for funding to retain a DNA expert. *See* Trial Court Opinion, 5/11/20, at 4-6; *see also id.* at 6 (explaining Appellant's motion for taxpayer funds for a DNA expert rested "solely upon bare assertions of indigency; it provide[d] no other support of his overall financial status.") (footnote omitted). We adopt Judge Williams' analysis as our own in disposing of Appellant's final two issues.

In sum, there is no merit to the issues Appellant raises on appeal. The parties shall attach a copy of the trial court's May 11, 2020 opinion in the event of further proceedings relevant to this matter.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/15/2021

- 15 -

# XIII. APPENDIX

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: BRADFORD COUNTY,PENNSYLVANIA

v. :
: CRIMINAL DIVISION
:
DANIEL EUGENE HARBST : No. 08-CR-0000400-2019

**OPINION**
(May 11, 2020, re: Defendant's Omnibus Post-Sentence Motion)

**Background**

On or about May 29, 2019, Daniel E. Harbst ("Defendant") was charged with multiple counts of Rape of a Child, Involuntary Deviate Sexual Intercourse with a Child, Corruption of Minors, and Indecent Assault. *See* Criminal Complaint, May 29, 2019. The Rape of a Child and Corruption of Minors charges were eventually withdrawn and dismissed, as were some of the Indecent Assault Charges, and the remaining counts were tried before a jury, beginning October 7, 2019.

At trial, the Commonwealth produced several witnesses, including the eight-year-old child victim who is Defendant's custodial (non-biological, non-adoptive) daughter, the victim's mother, the forensic interviewer, family relatives, the victim's first grade teacher, two law enforcement officers, and forensic and DNA scientists. Defendant testified on his own behalf, as did his wife, his mother, his grandmother, his mother's boyfriend, and a family friend. In addition to this live testimony, the forensic interview of the child from January 2019 was introduced into evidence under the Tender Years Hearsay Act and presented in the form of an audio/video recording.

At the conclusion of the three-day trial, the jury found Defendant guilty of all remaining counts of the Information, specifically being six (6) counts of Involuntary Deviate Sexual Intercourse with a Child ("IDSI"), 18 Pa.C.S. 3123(b), each being a felony of the first degree, and four (4) counts of Indecent Assault, 18 Pa.C.S. 3126(a)(7), each being a felony of the third degree based on the jury's finding there was contact between the victim's and Defendant's intimate or sexual parts under subsection (b)(3)(iii). *See* Order dated October 9, 2019; Verdict Slip dated October 9, 2019.

On January 2, 2020, defendant was sentenced to total confinement of eight (8) years to sixteen (16) years for each IDSI conviction, to be served consecutive to each other, for an aggregate sentence of forty-eight (48) years to ninety-six (96) years. Because the Indecent

Assault convictions merged with the IDSI convictions, no sentence was imposed for those convictions.

On Monday, January 13, 2020, Defendant timely filed an Omnibus Post-Sentence Motion ("Motion") which raises five principal arguments: (i) the verdict was not supported by sufficient evidence, (ii) the verdict was against the weight of the evidence, (iii) the court erred by "not granting tax payer funds to the Defense for its own independent DNA testing" given that "Defendant was financially indigent" and "[m]ost of the legal work performed by the defense counsel was, done pro-bono," (vi) the court erred by not granting a continuance of the trial, and (v) the sentence is too severe. *See* Motion, Counts I, II, IV, VI, and V2. The court will address each argument in turn.

**Discussion**

<u>Sufficiency of the Evidence</u>

Defendant argues that, "[t]he evidence did not show beyond a reasonable doubt that any of the elements of the crimes for which the Defendant was convicted were ever proven[.]" *See* Motion, Count II. As support, Defendant refers the court to his version of the evidence as set forth in the section of his Motion regarding his argument that the verdict was against the weight of the evidence. This section includes 26 numbered paragraphs, many of which appear to accurately recite undisputed facts. *See e.g.,* Motion, Count I, no eye witnesses other than the child victim testified (undisputed) (pars. 1, 13, 23); Defendant obtained and held custody of child despite not being biological father (undisputed) (pars. 4, 5, 6, 9); the child did not exhibit obvious fear of Defendant (undisputed) (pars. 2, 3); Defendant was employed and did not have a substance abuse problem (undisputed) (pars. 7,8); Defendant did not admit to sexually abusing the child (undisputed) (pars. 12, 14); Defendant and his wife had an active sex life (undisputed) (pars. 15, 16). Defendant also asserts that the Commonwealth failed to do, or failed to prove, certain other things, most of which is disputed, or contradicted by the evidence. *See e.g. id.*, the Commonwealth failed to produce valid DNA testing (disputed) (pars. 17, 18, 21, 22); the Commonwealth failed to establish the underwear the child was wearing was hers (disputed) (pars. 19, 20); the Commonwealth failed to rule out other males in the child victim's live (disputed) (par. 23). Even though some of the observations do not undermine the sufficiency of the evidence that was presented.

In analyzing a sufficiency of the evidence claim, the court must consider whether the evidence presented by the Commonwealth at trial established the defendant's guilt of each element of the offenses charged beyond a reasonable doubt. *See In the Interest of J.B.,* 647 Pa. 339, 368, 189 A.3d 390, 408 (2018). The relevant question is "whether, after viewing the

evidence in the light most favorable to the Commonwealth, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* At 377, 413 (citing *Jackson v. Virginia* 443 U.S. 307 (1979)(italics in original). Further, a reviewing court does not make new factual determinations based upon that evidence, but accepts the evidence, and all reasonable inferences drawn therefrom on which the fact finder could properly have based its verdict, as factually true. *See In the Interest of J.B.*, 647 Pa. at 379, 189 A.3d at 415.

A defendant will prevail in a sufficiency of the evidence claim only if the evidence, when viewed in a light most favorable to the Commonwealth, does not establish guilt beyond a reasonable doubt, or the evidence is equally consistent with the defendant's innocence as it is with his guilt. *See Id.* At 379-80, 415. "Where there is sufficient evidence to enable the [reviewing court] to find every element of the crime has been established beyond a reasonable doubt, [a] sufficiency of the evidence claim must fail." *Commonwealth v. Izurieta*, 171 A.3d 803, 806 (Pa. Super. 2017).

Here, the testimony of the child victim alone, both live and as recorded during her interview at The Children's House on January 27, 2019, was credible, persuasive, and compelling evidence of Defendant's guilt, beyond a reasonable doubt, to six counts of Involuntary Deviate Sexual Intercourse, and discussed four (4) instances where Defendant put his "thingy" or "dick", which she located on a picture both at trial and during the interview as a penis in her "butt." N.T. 10/8/2019 (7:13 – 7:23; 7:24 – 13:6; 17:6 – 18:13); Exs 25, 26, 27. The child also described the resulting "stuff in her underwear" as something that she did not "know what it is," but that it was "slimy[,] . . . really white," and "the next day it's all slimy but then it dries." (N.T. 10/8/19, 11:1 – 15). She also stated and described two (2) separate instances where Defendant put his penis in her mouth. (*Id.* 18:24 – 19:13). She said that she ended up with "stuff" in her mouth that she "spit" on her shirt and pillow." (*Id.* 19:14 – 24).

This testimony, standing alone, if believed by the jury, was sufficient to find Defendant guilty of six (6) counts of IDSI and four (4) counts of Indecent Assault. *See* Pa. S.S.J.I. 4.13(B)(Conviction based on victim's uncorroborated testimony in sexual offenses). Defendant's claim that the evidence was not sufficient to support the convictions must be denied.

Weight of the Evidence

Perhaps recognizing that the evidence offered at trial was, indeed, sufficient to support the verdict, Defendant also contends that the verdict was against the weight of the evidence, an analysis that is governed by the following standards:

Page 3 of 10 A-3

56

A motion for a new trial based on a claim that the verdict [was] against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived a different conclusion; rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts, certain facts are so clearly of greater value that to ignore them or to give them equal weight with all the facts is to deny justice.

*Izurieta*, 171 A.3d at 809 (citing *Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1054-55 (2013). "[A] new trial should be awarded [in a case in which a weight of the evidence claim has been raised] only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another chance to prevail." *Izurieta*, at 809.

Initially, it is worth noting that, at trial, although the child identified only two instances of sexual misconduct, *see* N.T. 10/8/19 16-19, the child also confirmed at trial that she could remember events better during the January forensic interview, that her statements to the forensic interviewer were truthful, and that it was easier for her to discuss the events in that setting. *See id.* 20-24. While it is appropriate to note and acknowledge the inconsistencies and conflicts between the child victim's live testimony at the October trial and her forensic interview nine (9) months earlier, such inconsistencies are insufficient to render the verdict a miscarriage of justice.

Additionally, there was other noteworthy evidence that supports the verdict, including the DNA evidence that was based, in part, on the semen that was found in the child's underwear that she wore to the forensic interview on January 29, 2019. *See* N.T. 10/8/19 133:7 – 133:18; 138:5 – 23; 141:15 – 142:1. Ex. 44. While the mere presence of semen in the child's underwear is in itself significant, the DNA evidence further bolsters the verdict. *See* N.T. 10/8/19, 142:20 – 152:19; 153:17 – 157:22; Exs. 51, 52, 53.

The jury's verdict to convict Defendant of six (6) counts of IDSI and four (4) counts of Indecent Assault was not against the weight of the evidence. Accordingly, Defendant's motion for a new trial will be denied.

<u>Failure to Grant Funds for Expert Services and DNA Testing</u>

Defendant contends that the Court erred when it denied the following requests, made by Defendant in his Pre-Trial Motion:

A. Authorize a DNA expert to review the spermatozoa evidence [seized as evidence], possibly test the pillow and underwear [seized as evidence] and assist the defense with respect thereto; and

B. direct [sic] the County of Bradford to pay the costs of the aforementioned experts [sic].

*See* Pre-Trial Motion at Wherefore ... Paragraphs A. and B. For the reasons set forth below, the Court's denial of such request was not in error.

Initially, a determination of indigence is analyzed within the framework of Rule 240 of the Pennsylvania Rules of Civil Procedure (*In Forma Pauperis*). See *Commonwealth v. Konias*, 136 A.3d 1014 (Pa. Super. 2016). In *Konias*, the Superior Court of Pennsylvania entertained the question of whether a trial court had erred in denying, without an evidentiary hearing, a defendant's motion requesting funding to pay for expert services, including clothing analysis. The defendant (appellant) in *Konias*, who was represented by privately-retained counsel, had filed two motions for such relief; however, neither motion contained detailed information as to defendant's financial status at the time of filing. Based upon this deficiency, the trial court determined that defendant was not indigent and denied the motions.[1] On appeal, the Superior Court, in analyzing defendant's prayer for relief, observed (i) "it is well established that indigent defendants have a right to access the same resources as non-indigent defendants in criminal proceedings" (citing *Commonwealth v. Curnutte*, 871 A.2d 839, 842 (Pa. Super.2005)), (ii) "the State has an affirmative duty to furnish indigent defendants the same protections accorded those financially able to obtain them"(citing *Commonwealth v. Sweeney*, 533 A.2d 473, 480 (Pa. Super. 1987), and (iii) that "[p]rocedural due process guarantees that a defendant has the right to present competent evidence in his defense, and the state must insure that an indigent defendant has a fair opportunity to present his defense" (citing *Ake v. Oklahoma*, 470 U.S. 68, 76 (1985). See *Konias*, at 1019.

The *Konias* Court went on to confirm that when such a claim of indigency is raised, in order to trigger the necessity of an evidentiary hearing, the petition must include a detailed financial affidavit. See *Konias*, 136 A.3d at 1021; *see also Commonwealth v. Cannon*, 954 A.2d 1222, 1226 (Pa. Super. 2008)(determination of indigency and eligibility for court-appointed counsel is analogous to determination of eligibility for public funding for expert services; therefore, Rule 240's requirement for petition and affidavit providing information on defendant's financial status is applicable to requests for such services). Thus, the trial court must first look to the motion itself to determine if it contains, rather than a mere averment of indigency, at least "a modicum" of information relating to the defendant's financial status. See *Konias*, 136 A.3d at 1021. That means the petition must set out information as to the defendant's present or past salary/wages; other kinds of income received by the defendant during the year preceding the filing of the motion; other contributions for household support received by the defendant;

---

[1] The court noted that the fact that a defendant has retained private counsel is not, in itself, sufficient to establish that he is not indigent. *See Konias* at 1021.

Property and other available assets owned by the defendant; debts and obligations owed by the defendant; persons dependent upon the defendant for support; and the costs associated with expert services requested. *See Id.* at 1019; *see also Cannon*, 954 A.2d at 1226[*P10]. In short, a mere averment of indigency and inability to pay is not sufficient under Rule 240 to compel an evidentiary hearing on the issue. *See Konias* at 1021.

In this case, Defendant never sought *in forma pauperis* status under Rule 240 prior to his request for the payment of an unidentified expert made by motion two weeks prior to trial. Further, Defendant's Pre-Trial Motion merely asserts that, "[t]he Defendant has no assets. He is unable to pay for his legal services. He has an ability to only pay his rent and food." *See* Pre-Trial motion at paragraph 11. Thus, Defendant's Pre-Trial Motion rests solely upon bare assertions of indigency; it provides no other support of his overall financial status.[2]

In court properly denied Defendant's request for funding without a hearing. *See Konias* at 1019, 1020 (The decision to provide public funds to indigent persons for expert forensic services is "vested in the sound discretion of the court," which recognizes "[t]he Commonwealth is not obligated to pay for the services of an expert simply because a defendant requests [such services].") (citing *Cannon*, 954 A.2d at 1226, and *Curnotte*, 871 A.2d at 842).[3]

Request for a Continuance

Defendant also contends that the Court erred when it failed to grant Defendant's request for a continuance of the trial. *See* Motion, Count I, par.2. In advancing this argument,

---

[2] In Defendant's subsequent Omnibus Post-Sentence Motions at Count V (Pretrial Court Errors), it is stated that "[m]ost of the legal work performed by the defense attorney was done pro-bono"; however, neither the percentage of the "legal work" paid for by Defendant nor the provenance of the funds he used for payment identified.

[3] On the day of jury selection, Defendant renewed his request for funding for a DNA expert in connection with his oral motion for a continuance. Further, Defendant suggested that the court should consider holding an evidentiary hearing on Defendant's claimed indigence and discovery issues to preserve the issues for appeal. 10/7/19, Court Recording, 9:10-9:11 a.m. These requests were in response to the court advising that "there's a difference" between private counsel in this case simply asserting on the verge of trial that he is representing an indigent client "basically pro bono," and a situation where a lawyer represents an indigent defendant pro bono and timely petitions the court to "have a hearing at the beginning to determine that he is eligible for assistance." *Id.* 9:09-9:10 a.m. Here, the court noted, in denying the last-minute renewed request, "we have a courtroom full of jurors" and it is not appropriate to "hav[e] a hearing today to determine if he's indigent." *Id.* 9:10-9:11 a.m.

Defendant contends that the Commonwealth failed to "promptly" provide to Defendant "the nurses [sic] rape kit findings and documents" and that by denying Defendant's request for a continuance, which was made on the morning of jury selection, Defendant was denied an opportunity to "more fully review [ ] those findings." *Id.* The rape kit information was apparently, reviewed by Defendant's counsel on or about September 23, 2019, two weeks before trial, and was not offered into evidence by any party at trial.

In order to examine Defendant's claim that it was error to deny his request to continue the trial, it is necessary to briefly review part of the procedural history. Initially, pursuant to Order dated July 23, 2019, this case was set for trial during the week of August 5, 2019. At the first pre-trial conference on July 23, 2019, both the Commonwealth and Defendant indicated the case was ready for trial. *See* N.T. 7/23/19 10:09 a.m.; *see also* Order dated July 23, 2019. The only issue raised by Defendant was the question of whether a transcript of the child victim's forensic interview had been prepared in connection with a dependency case involving the child. The Court explained that it had not, that no transcript had even been requested, and that a digital copy of the interview was available. *Id.* With regard to the likelihood of trial, the court noted that this case was at least third on the list and that there may not be time to try the case that week. *Id.* Nonetheless, the court required that any motions in limine be filed on or before August 1, 2019. None were filed. By Order dated August 1, 2019, the trial was continued, by agreement of the parties, and scheduled for a second pre-trial conference on September 24, 2019, with trial to begin October 7, 2019. *See* Order dated September 24, 2019. On September 23, 2019, one day before the pre-trial conference, and approximately two weeks before trial, Defendant filed a Pre-Trial Motion, discussed above, seeking an order of court that would require the Commonwealth to pay for an unidentified DNA expert.

Despite the timing of the motion, the Court granted it, in part, by (i) confirming Defendant's existing and continuing right to "retain any expert he wishes," (ii) confirming Defendant's existing and continuing right to "take any necessary or appropriate action with respect to CYS records from other counties," and (iii) directing "Bradford County CYS . . . to review their records with respect to the defendant and the alleged victim or confirm that no further records exist." *See* Order dated September 24, 2019. CYS undertook this review and it was confirmed, contrary to defense counsel's claim at the pre-trial conference, that there were no additional records involving Defendant and the victim. *See* N.T. 10/8/19, 7:9-8:6.

Finally, on the morning of jury selection, *i.e.*, October 7, 2019, after the undersigned had generally addressed the panel of potential jurors, Defendant made is oral motion to continue the trial, arguing that the Commonwealth did not provide the report from the nurse who examined the victim until only recently, that photographs of Defendant's home were just produced the week before, and that Defendant was being disadvantaged by the Court's previous denial of his request to have the Commonwealth pay for a DNA expert on Defendant's behalf. *See* 10/07/19

Court Recording, 8:59-9:03 a.m. The District Attorney explained that the existence of the nurse's report was known to Defendant for months and that it says very little of significance except that the child's underwear was placed in the rape kit. Further, explained counsel for the Commonwealth, the photographs of Defendant's home were reviewed by the District Attorney for the first time the previous week. *Id.* 9:03-9:05 a.m. The Court found that while it would have been better practice for the Commonwealth to have obtained and produced the nurse's report and photographs earlier, this failure, given the nature of the evidence, was not sufficiently significant or prejudicial to Defendant so as to warrant a continuance of the trial. *Id.* 9:05-9:08 a.m.

It was within the trial court's sound discretion to deny Defendant's oral motion to continue the trial, and it was not error to do so.

<u>Severity of the Sentence</u>

Finally, Defendant complains that, for various reasons, the sentence imposed is greater than necessary in that "effectively constitutes a sentence of life in prison" and amounts to "cruel and unusual punishment [.]" *See* Motion, count IV, pars. 9, 10.

> Sentencing is a matter vested within the sound discretion of the sentencing judge and a sentence will not be disturbed ... absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, [it must be established] by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Coulverson*, 34 A.3d 135, 143 (Pa. Super. 2011)(citing *Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa. Super. 1999)(*en banc*).

In Pennsylvania, a sentence may be unreasonably severe if (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is clearly unreasonable based on the circumstances of the case; and (3) the sentence falls outside the guidelines and is unreasonable. *See Coulverson* at 146 (citing *Commonwealth v. Bowen*, 975 A.2d 1120, 1123-24 (Pa. Super. 2009). A sentencing court has broad discretion to choose a penalty from the sentencing alternatives identified in the sentencing guidelines including permissible periods of confinement. However, the court's choice of penalty must be consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. Moreover, the court is vested with broad discretion in determining the defendant's sentence since the court is in the best position to view and evaluate the defendant's character, demeanor, and willingness to take responsibility for his crim(s). *See Commonwealth v. Ali*, 637 Pa. 371, 388, 149 A.3d 29, 38-39 (2016); *see also Commonwealth v. Coulverson*, 34 A.3d 135, 144 (Pa. Super. 2011)(citing *Commonwealth v. Fullin*, 892 A.2d 843, 847-48 (Pa. Super. 2006)

(the sentencing court must consider the factors set out in 42 Pa. C.S. 9721(b) as well as the sentencing guidelines). Additionally, "[t]he record as a whole must reflect the court's reasons for the sentence imposed and its meaningful consideration of the facts of the crimes and the character of the offender." *Coulverson*, 34 A.3d at 146 (citing *Commonwealth v. Malovich*, 903 A.2d 1247, 1253 (Pa. Super. 2006).

With respect to Defendant's constitutional argument, "The Eighth Amendment [to the U.S. Constitution] does not require strict proportionality between the crime committed and the sentence imposed; rather, it forbids only extreme sentences that are *grossly disproportionate* to the crime." *Commonwealth v. Lankford*, 164 A.3d 1250, 1252 (Pa. Super. 2017)(citing *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 209 (Pa. 1997)(italics in original). "[A] punishment is cruel and unusual if it is wholly and irrationally disproportionate to the crime, or, in other words, so greatly disproportionate to an offense so as to offend evolving standards of decency or a balanced sense of justice." *Commonwealth v. Ehrsam*, 512 A.2d 1199, 1210 (Pa. Super. 1986), *appeal denied*, 515 Pa. 573, 527 A.2d 535 (1987), *cert. denied*, 493 U.S. 932 (1989).

In *Commonwealth v. Chmiel*, the Superior Court of Pennsylvania, in considering a claim of cruel and unusual punishment raised in connection with a sentence arising from a conviction for sexual crimes against a minor, opined that:

> [Such crimes] committed against a minor are crimes of great severity and the Legislature in enacting [age-specific penal statutes and sentencing guidelines] expressed its grave concern for the protection of minors. Specifically,[these statutes and guidelines][are] designed to punish those criminals who prey on helpless children in our society. Clearly, the nature and severity of the crimes justify the legislature's [sentencing scheme].
>
> In the analysis of the effects [of such sentence] on individual dignity, we . . . Find no constitutional infirmity. As the U.S. Supreme Court Stated in *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981), 'to the extent that [such sentences] of confinement are restrictive and even harsh, they are part of the penalty that criminal offenders must pay for their offenses against society."

*Commonwealth v. Chmiel*, 610 A.2d 1058, 1060 (Pa. Super.1992).

There is no denying that the sentence imposed in this case is lengthy, as Defendant received a sentence of eight (8) to sixteen (16) years for each of the six IDSI convictions. Each sentence was, however, near the bottom of the standard range, which was six (6) to twenty (20) years. Further, the undersigned not only had the benefit of a pre-sentence investigation report, but also heard all of the evidence at trial. "When a sentencing court has reviewed a presentence investigation report, [it is presumed] that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence." *Commonwealth v. Baker* 72 A.3d 652, 663 (Pa.

Super. 2013); *see also Commonwealth v. Fullin*, 892 A.2d 843, 849[*P14] (Pa. Super. 2006) (same).

It is also worth noting, when considering the severity of the sentence, the mandate of 42 Pa. C.S. 9718(a)(1), that persons convicted of IDSI with a person less than 16 years of age, shall receive a mandatory term of confinement of not less than ten years. Here, Defendant was sentenced to minimum terms of eight years for each conviction of IDSI. The imposition of the mandatory ten-year minimum was not required because the Commonwealth did not give "reasonable notice" of its "intention to proceed under this section . . . before sentencing." Pa. C.S. 9718(c). Nonetheless, the fact a mandatory ten-year minimum sentencing scheme exists for these offenses, suggests that the sentence of eight years imposed for each conviction was not excessive insofar as statutory guidance is concerned. Defendant's minimum sentence could have very easily been ten years for each conviction, *i.e.*, an aggregate minimum he received.

In these circumstances, it was not abuse of discretion for the Court to have determined that the sentence imposed was appropriate. *See Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. 2011) ("[W]here the sentencing court imposed a standard range sentence with the benefit of a pre-sentence report, we will not consider the sentence excessive.").

For the reasons set forth herein, Defendants' Omnibus Post-Sentence Motion will be denied. A separate order will issue contemporaneously herewith.

BY THE COURT,

Date: <u>5/11/2020</u>

_____
Evan S. Williams III, Judge